UNITED STATES, Appellant and Cross-Appellee

v.

Daniel J. DATAVS, Senior Airman
U.S. Air Force, Appellee and Cross-Appellant

No. 12-5001

Crim. App. No. 37537

United States Court of Appeals for the Armed Forces

Argued October 9, 2012

Decided December 14, 2012

RYAN, J., delivered the opinion of the Court, in which BAKER, C.J., ERDMANN and STUCKY, JJ., and COX, S.J., joined.


Counsel

For Appellant and Cross-Appellee:  Captain Tyson D. Kindness (argued); Colonel Don M. Christensen; Lieutenant Colonel Christopher T. Smith, and Gerald R. Bruce, Esq. (on brief); Lieutenant Colonel Linell A. Letendre.

For Appellee and Cross-Appellant:  Major Michael S. Kerr (argued).


Military Judge:  Grant L. Kratz



**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

United States v. Datavs, 12-5001/AF

Judge RYAN delivered the opinion of the Court.

Contrary to his pleas, a panel of officer and enlisted members sitting as a general court-martial convicted Appellee of one specification of making a false official statement and two specifications of forcible sodomy, violations of Articles 107 and 125, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 907, 925 (2006). The adjudged and approved sentence provided for a dishonorable discharge, forfeiture of all pay and allowances, and reduction to E-1.

The United States Air Force Court of Criminal Appeals (AFCCA) affirmed the findings and the sentence as approved by the convening authority, except for the forfeiture of all pay and allowances, of which the court affirmed a forfeiture of "$933.00 of [Appellee's] pay for two months." United States v. Datavs, 70 M.J. 595, 605 (A.F. Ct. Crim. App. 2011). Despite this favorable ruling, the Judge Advocate General of the Air Force (TJAG), on certification under Article 67(a)(2), UCMJ, 10 U.S.C. § 867(a)(2) (2006), asked us to hold that the AFCCA misapplied Strickland v. Washington, 466 U.S. 668 (1984), and Harrington v. Richter, 131 S. Ct. 770 (2011), in determining that trial defense counsel's performance was ineffective.[1] On

---

[1] On February 10, 2012, TJAG requested that action be taken with respect to the following issue:

2

April 18, 2012, we granted Appellee's cross-petition to determine the following issue:

> WHETHER [APPELLEE] RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN DEFENSE COUNSEL FAILED TO OBTAIN AN EXPERT CONSULTANT IN THE FIELD OF SEXUAL ASSAULT EXAMINATIONS, FAILED TO MAKE CHALLENGES FOR CAUSE AGAINST TWO PANEL MEMBERS WHO WERE BASE VICTIM ADVOCATES, AND FAILED TO PROPERLY IMPEACH S.M.F. USING HER PERSONAL TELEPHONE RECORDS.[2]

Insofar as there was no error that materially prejudiced a substantial right of Appellee, see Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2006), the decision of the United States Air Force Court of Criminal Appeals is affirmed.

## I.  FACTS

The morning of June 15, 2008, Appellee and SF, a civilian, engaged in consensual vaginal intercourse.[3]  SF alleged that, following the vaginal intercourse, Appellee forced her to engage in both oral sodomy and anal sodomy.  Later that day, SF was examined by Burton, a certified Sexual Assault Nurse Examiner (SANE Burton).

---

> WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS INCORRECTLY APPLIED THE STANDARD OF LAW UNDER STRICKLAND v. WASHINGTON, 466 U.S. 668 (1984) AND HARRINGTON v. RICHTER, 131 S. CT. 770 (2011), WHEN EVALUATING WHETHER TRIAL DEFENSE COUNSEL WAS INEFFECTIVE FOR NOT SEEKING EXPERT ASSISTANCE DURING TRIAL AFTER THE GOVERNMENT'S EXPERT WITNESS TESTIFIED.

[2] United States v. Datavs, 71 M.J. 301 (C.A.A.F. 2012) (order granting review).

[3] For a more complete factual history, see Datavs, 70 M.J. at 596-97.

Prior to trial, trial defense counsel and assistant trial defense counsel interviewed SANE Burton on three separate occasions and observed her testimony at the Article 32, UCMJ, 10 U.S.C. § 832 (2006), hearing. SANE Burton discussed the findings she had made during her vaginal and anal examination of SF. SANE Burton indicated that the trauma to SF's vagina was "some of the worst she had ever seen," and "that the sexual encounter that caused the [vaginal] trauma must have been very painful." SANE Burton described SF's anal trauma as "considerable," but did not indicate a willingness to testify about the likely level of pain, and agreed that a "first-time experience with anal sex, a single insertion of the penis, or even a partial insertion of the penis" could have been the cause of the anal trauma she observed.

On July 28, 2008, during an interview with civilian and OSI investigators, Appellee responded to SF's allegation of forced anal sex by stating that "it may have slipped in," but that it wasn't anal sex. Subsequently, Appellee submitted a written statement in which he admitted that he and SF engaged in consensual anal sodomy.

Charges were referred to a general court-martial on March 2, 2009. During voir dire, two panel members identified themselves as base victim advocates, who had received training on how to deal with victims of alleged sexual abuse. Both

4

members stated they had not acted as victim advocates as of the time of the trial and affirmed their impartiality and ability to decide the case solely on the evidence and military judge's instructions. Defense counsel did not challenge the inclusion of either member on the panel.

Prior to trial, defense counsel requested that the convening authority appoint a SANE to assist the defense in responding to SANE Burton's anticipated testimony. After the convening authority denied the request, defense counsel submitted a motion to compel production of a SANE. However, to avoid the potential spillover effect from SANE Burton's vivid and prejudicial description of SF's vaginal injuries, and because the defense strategy was to establish that SANE Burton's assessment of the anal trauma was inconclusive as to whether it was the result of consensual or nonconsensual activity, defense counsel withdrew the motion in exchange for the Government's representation that it intended "to only offer portions of the SANE Examination that relate[] to injuries to the anus and not to any injuries to the vaginal area."

The trial defense counsel asserted that SANE Burton testified about the anal injuries in "surprisingly more provocative and aggressive ways" than she had in her previous descriptions to defense counsel. SANE Burton also stated that, although it was "physically possible" for SF's anal injuries to

have occurred during consensual intercourse, "[t]he injuries were . . . consistent with [SF]'s statement of forced anal penetration."

Rather than renew the motion for the appointment of a defense expert to assist in responding to SANE Burton's testimony, defense counsel proceeded with cross-examination without consulting a SANE expert. On cross, SANE Burton admitted, consistent with her pretrial statements and Article 32, UCMJ, testimony, that it was "medically possible" for the anal trauma to have been caused by a single or partial insertion of the penis, and also admitted that she could not determine if the trauma was caused by "consensual or unconsensual activity."

The general court-martial convicted Appellee of one specification of false official statement and two specifications of forcible sodomy. Following his conviction, Appellee's family hired a certified SANE, SANE O'Neal, to review SANE Burton's examination and testimony, and to report her own conclusions. SANE O'Neal was critical of both SANE Burton's examination procedures and some of her general conclusions. But, like SANE Burton, SANE O'Neal concluded that: (1) some force is necessary to perform anal sex, see Datavs, 70 M.J. at 601; (2) SF sustained some anal injuries; and (3) it was possible that all the injuries described in SANE Burton's testimony could have occurred as a result of either consensual or nonconsensual anal

6

sex.  The AFCCA granted Appellee's motion to submit an affidavit from SANE O'Neal containing her report.  Appellant's Motion to Submit Documents at 1, Datavs, 70 M.J. 595 (A.F. Ct. Crim. App. 2011) (No. ACM 37537).

## II.  AFCCA DECISION

Before the AFCCA, as relevant to the issues raised before this Court, Appellee alleged that defense counsel were constitutionally ineffective because they:  (1) failed to obtain an expert consultant in the field of sexual assault examinations after the Government's expert witness testified; (2) failed to admit telephone records to impeach SF's testimony that she made no attempt to contact Appellee after their encounter on June 15, 2008; and (3) failed to make challenges for cause against two panel members who were base victim advocates.  The AFCCA granted two Government motions to submit documents, permitting trial defense counsel and assistant trial defense counsel to provide affidavits and supplemental affidavits that responded to each of Appellee's ineffectiveness claims.

After considering the defense counsel's affidavits, the record of trial, and SANE O'Neal's report, the AFCCA held that (2) and (3) of Appellee's ineffectiveness claim fell "well within the professional norms expected of able defense counsel." Datavs, 70 M.J. at 602.  Defense counsel's decisions not to admit telephone records to impeach SF's testimony in order to

7

avoid the risk that the Government would use the records to locate SF's former boyfriend -- a potential witness with whom SF discussed details of the sexual encounter that were consistent with her allegations -- and not to challenge two panel members who were base victim advocates because defense counsel believed they were favorable members, were reasonable. See Strickland, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . .").

The AFCCA concluded, however, with respect to (1) of Appellee's ineffectiveness claim, that following SANE Burton's testimony, defense counsel performed deficiently in proceeding with cross-examination without expert assistance. Datavs, 70 M.J. at 600. The court then tested for substantial prejudice. Id. at 601-02. Upon comparing SANE Burton's testimony to SANE O'Neal's report, the court determined that defense counsel's error was nonprejudicial. Id. at 602.

### III. DISCUSSION

#### A.

To establish ineffective assistance of counsel, "an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." United States v. Green, 68 M.J. 360, 361 (C.A.A.F. 2010) (citing Strickland, 466 U.S. at 687). In

8

reviewing for ineffectiveness, the Court "looks at the questions of deficient performance and prejudice de novo." United States v. Gutierrez, 66 M.J. 329, 330-31 (C.A.A.F. 2008).

With respect to Strickland's first prong, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 466 U.S. at 689; see also Harrington, 131 S. Ct. at 788 ("Even under de novo review, the standard for judging counsel's representation is a most deferential one.").

As to the second prong, a challenger must demonstrate "a reasonable probability that, but for counsel's [deficient performance] the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "[T]he question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695. "It is not enough to show that the errors had some conceivable effect on the outcome . . . ." Harrington, 131 S. Ct. at 787 (quoting Strickland, 466 U.S. at 693 (internal quotations omitted)). Instead, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; see also Harrington, 131 S. Ct. at 787-88 ("Counsel's errors must be so serious as to deprive the defendant of a fair trial, a trial

whose result is reliable." (quoting Strickland, 466 U.S. at 687 (internal quotations omitted))).

                                    B.

    With respect to Appellee's ineffective assistance of counsel claims related to defense counsel's failure to impeach a single statement of SF through her telephone records and failure to challenge two members for cause, we agree with the AFCCA's determination that defense counsel acted "well within the professional norms expected of able defense counsel." Datavs, 70 M.J. at 602.

    Defense counsel do not perform deficiently when they make a strategic decision to accept a risk or forego a potential benefit, where it is objectively reasonable to do so. See United States v. Gooch, 69 M.J. 353, 362-63 (C.A.A.F. 2011) (holding that it was not deficient performance to decide not to have the military judge dismiss a specification and risk a mistrial where counsel had strategic reasons for keeping the assembled panel); United States v. Stephenson, 33 M.J. 79, 80 (C.M.A. 1991) (concluding that it was not deficient performance to decline to call a character witness at a sentencing hearing in order to avoid harmful rebuttal evidence).

    Here, defense counsel determined that the members in question possessed characteristics that made them more likely to be persuaded by the defense's theory of the case, and, during

voir dire, both members affirmed their impartiality and ability to decide the case solely on the evidence and instructions. Likewise, in not admitting SF's telephone records, defense counsel avoided alerting Government counsel to the existence of and contact information for SF's boyfriend, who was known to have information that would be damaging to the defense. For these reasons, we hold that defense counsel's strategic choices fell within the bounds of reasonable performance.

C.

When reviewing ineffectiveness claims, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." Strickland, 466 U.S. at 697. Rather, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id.

Appellee argues that defense counsel's decisions to cross-examine SANE Burton without consulting with a SANE expert and not to counter SANE Burton's testimony with a defense SANE expert resulted in his conviction. We are not persuaded. We agree with the AFCCA that Appellee has not demonstrated that there is a reasonable probability that, if SANE O'Neal had been consulted at trial, prior to cross-examination of SANE Burton, or had been called during the defense's case, the panel members

11

would have harbored a reasonable doubt respecting guilt.  See
Strickland, 466 U.S. at 694.

Appellee's written statement admits that he intentionally
engaged in anal sodomy with SF, and the only contested issues
with regard to his conviction for forcible anal sodomy were
whether the sodomy occurred by force and without SF's consent.
SANE Burton testified that SF's anal injuries were "consistent
with [SF's] statement of forced anal penetration," but that it
was "physically possible" that the injuries were caused by
consensual intercourse.  On cross-examination, SANE Burton
admitted that she could not conclude whether the anal trauma was
caused by "consensual or unconsensual activity."  SANE Burton
also admitted that it was "medically possible" for SF's anal
trauma to have been caused by a single, or partial insertion of
the penis, and that there is the "potential for injury" any time
a penis enters the anus.  Further, she conceded that her opinion
did not take into account whether the subjects of her prior
examinations were experienced with anal sex or whether they had
prepared their bodies prior to engaging in anal sex.  Thus, SANE
Burton's testimony, taken as a whole, was inconclusive as to
whether the sodomy occurred by force and without SF's consent.

Appellee fails to demonstrate a sufficient "delta" between
the probative weight of SANE Burton's testimony following
defense counsel's unassisted cross-examination and the probative

weight of that testimony had defense counsel either (1) cross-examined SANE Burton with the benefit of expert assistance, or (2) countered with testimony from a defense expert. Compare Boyle v. McKune, 544 F.3d 1132, 1138-39 (10th Cir. 2008) (holding that any deficiency associated with defense counsel's "failure to interview and call to the stand any expert witnesses" was nonprejudicial where the appellant did not demonstrate "that medical experts could have reached a conclusion regarding consent contrary to the conclusions reached by the [government's experts]" and defense counsel "elicited from the government's expert nurse witnesses that it was possible the injuries on [the victims] could have stemmed from consensual vaginal sex, lack of lubrication, and even the re-aggravation of a previous injury"), with Caro v. Woodford, 280 F.3d 1247, 1256-58 (9th Cir. 2002) (holding that trial counsel's failure to investigate and present evidence of brain damage was prejudicial error where three separate expert witnesses testified at an evidentiary hearing that they would have concluded that petitioner suffered from brain damage). See also Amos v. Renico, 683 F.3d 720, 733 (6th Cir. 2012) (concluding that "trial counsel's failure to investigate and call expert witnesses did not work to [appellant's] actual and substantial disadvantage" where the expert scientists who authored the "articles that [appellant] claims counsel should have discovered

13

would not have contradicted [the government expert's] testimony"); Villegas v. Yates, No. CV 08-02073-JFW (VBK), 2009 U.S. Dist. LEXIS 102503, at *16, *23-*25, 2009 WL 3668625, at *4-*7 (C.D. Cal. Oct. 30, 2009) (concluding that the "[p]etitioner has failed to demonstrate that counsel's trial strategy was unreasonable or prejudicial" in "fail[ing] to present an . . . expert witness to counter the prosecution witness" where the expert submitted a sworn declaration that "accepts -- or does not deny -- that [the victim] sustained injuries and, moreover, admits that it is just as likely that such injuries were incurred during non-consensual as consensual sex").

Like SANE Burton's testimony, SANE O'Neal's report, taken as a whole, concludes that: (1) some amount of force is required to engage in consensual or nonconsensual anal sex; (2) SF sustained some anal injuries; and (3) all of the injuries could have occurred as a result of consensual or nonconsensual anal sex. Thus, while critical of SANE Burton's examination procedures and some of her general conclusions, SANE O'Neal's report is substantially consistent with SANE Burton's testimony with regard to the issues of force and consent.

Appellee has not demonstrated that the assistance or testimony of a SANE expert would have substantially undermined the force of SANE Burton's testimony, taken as a whole, with

14

regard to the issues of force and consent -- let alone offered anything close to a definitive conclusion that the anal sodomy was consensual. Thus, Appellee's conviction would still have hinged on whether the members found SF's testimony that she did not consent credible in light of Appellee's statement that SF had consented. When viewed cumulatively with Appellee's contradictory statements as to whether he and SF had even engaged in anal sodomy and his conviction for making a false official statement to the police, there is no "reasonable probability" that the panel would have arrived at a different outcome after hearing SANE O'Neal's testimony. Thus, we hold that defense counsel's decision to forego expert assistance and testimony is not "sufficient to undermine confidence in the outcome" of Appellee's court-martial, and did not prejudice his defense. See Strickland, 466 U.S. at 694.

D.

With respect to Appellant's request that we revisit the AFCCA's determination that defense counsel's failure to seek production of a SANE expert following SANE Burton's testimony was not "within the bounds of reasonable performance expected from competent counsel," Datavs, 70 M.J. at 600, we note that the AFCCA also concluded that there was no prejudice from that decision. Id. at 602.

15

To the extent that the AFCCA's decision might be read to say that counsel's performance is per se deficient by failing to counteract an adverse expert's unexpected testimony with an expert witness of their own, that would be an erroneous statement of the law.  Harrington, 131 S. Ct. at 791 ("Strickland does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense.  In many instances cross-examination will be sufficient to expose defects in an expert's presentation."); Strickland, 466 U.S. at 689 ("There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way.").

Since we conclude that Appellee was not prejudiced by any alleged error, see supra Part III.C., we do not reach the question whether defense counsel's decision not to renew the defense motion for expert assistance in fact constituted deficient performance in this case.  See Strickland, 466 U.S. at 697.  Appellant won below on the absence of prejudice, and we agree with the AFCCA that there is no prejudice.  See United States v. Gilley, 14 C.M.A. 226, 226-27, 34 C.M.R. 6, 6-7 (1963) (holding the questions presented moot because "[p]ractically speaking, any action which we might take with respect to the certified issues would not materially alter the situation

16

United States v. Datavs, 12-5001/AF

presented with respect either to the accused or the Government"); see also United States v. McIvor, 21 C.M.A. 156, 158, 44 C.M.R. 210, 212 (1972) (holding the certified questions moot because resolution of the issue would not "result in a material alteration of the relationship of the parties"); United States v. Aletky, 15 C.M.A. 536, 536-37, 37 C.M.R. 156, 156-57 (1967) (holding the certified question moot because the accused had been separated from the service).

## IV.  DECISION

Accordingly, insofar as there was no error that materially prejudiced a substantial right of Appellee, see Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2006), the decision of the United States Air Force Court of Criminal Appeals is affirmed.