# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM S32707**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Dalyn P. LOWE**
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 11 February 2022

————————————

*Military Judge:* Colin P. Eichenberger.

*Sentence:* Sentence adjudged 18 May 2021 by SpCM convened at Hill Air Force Base, Utah. Sentence entered by military judge on 8 June 2021: Bad-conduct discharge, confinement for 60 days, and reduction to E-1.

*For Appellant:* Major Spencer R. Nelson, USAF.

*For Appellee:* Major Abbigayle C. Hunter, USAF; Mary Ellen Payne, Esquire.

Before KEY, ANNEXSTAD, and MEGINLEY, *Appellate Military Judges.*

Judge ANNEXSTAD delivered the opinion of the court, in which Senior Judge KEY and Judge MEGINLEY joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

ANNEXSTAD, Judge:

A special court-martial composed of a military judge convicted Appellant, in accordance with his pleas and pursuant to a plea agreement (PA), of one specification of assault consummated by a battery upon his spouse and one

specification of assault consummated by a battery upon his spouse on divers occasions in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928.[1,2] The military judge sentenced Appellant to a bad-conduct discharge, 60 days of confinement, and reduction to the grade of E-1.[3]

Appellant personally raises a single issue before this court pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982): whether Appellant was denied effective assistance of counsel under the Sixth Amendment[4] when his defense counsel failed to present and argue evidence of Appellant's post-traumatic stress disorder (PTSD) diagnosis during sentencing.[5]

Finding no error materially prejudicial to a substantial right of Appellant, we affirm the findings and sentence.

## I. BACKGROUND

Pursuant to his pleas, Appellant was convicted of two specifications of assault consummated by a battery upon his spouse. Consistent with his elections at trial, Appellant was represented by Captain (Capt) AM and Capt DS.

Prior to trial, but after the date of the offenses, Appellant was diagnosed with PTSD. Appellant's PTSD diagnosis was supported by both personal and military-related traumatic events, including the death of his younger brother and numerous events he stated he experienced while deployed to Turkey and Syria. During the investigation into the charged offenses, Air Force investigators conducted interviews with Appellant's family, co-workers, supervisors, and instructors, and found that Appellant had provided false information to his mental health providers regarding some of his experiences.

---

[1] Since all offenses were committed after 1 January 2019, all references to the UCMJ are to the *Manual for Courts-Martial*, *United States* (2019 ed.).

[2] In accordance with the plea agreement (PA), dated 11 May 2021, the Government withdrew and dismissed one specification for willfully spoiling non-military property and one specification for extramarital sexual conduct in violation of Articles 109 and 134, UCMJ, 10 U.S.C. §§ 909, 934, respectively.

[3] The adjudged sentence complied with the sentence limitations as detailed in the PA. The PA limited the term of confinement to 60 days minimum, 90 days maximum for each specification. The PA also allowed the terms of confinement to run concurrently, consecutively, or a mixture of both, but capped the total consecutive confinement at 90 days. The PA further required the military judge to adjudge a bad-conduct discharge.

[4] U.S. CONST. amend. VI.

[5] We reworded Appellant's assignment of error.

During the sentencing phase of trial, the Defense did not present specific evidence that Appellant was diagnosed with PTSD, but did supplement evidence presented by the Government relating to Appellant's combat service. For example, the Government presented Appellant's personal data sheet and his enlisted performance reports, both of which documented his deployments and combat-related service. Appellant's trial defense counsel supplemented this evidence by providing the citation for the Air Force Achievement Medal he earned for his deployment to Syria from 2018–2019. Trial defense counsel also presented multiple forms of evidence concerning Appellant's younger brother's death and the impact it had on Appellant. Specifically, Appellant's trial defense counsel called Appellant's mother as a defense witness during sentencing. She testified about the close relationship Appellant had with his younger brother, the circumstances surrounding his death,[6] and the impact she saw it have on Appellant's mental state. Appellant also provided oral and written unsworn statements, wherein he discussed his brother's death, the impact it had on his mental health, and the steps he had taken to seek counseling subsequent to the charged offenses.

## II. DISCUSSION

Appellant contends that his trial defense counsel were ineffective in that they failed to present information or argue evidence of his PTSD diagnosis. Specifically Appellant argues that his trial counsel were deficient by not using his PTSD diagnosis to show: (1) how it "affected his cognitive and emotional abilities," and (2) "how it could have mitigated the offenses for which he was convicted." Appellant asks that we find his counsel ineffective and reevaluate his sentence. We find no merit to Appellant's claims and determine that no relief is warranted.

### A. Additional Background

On 8 December 2021, we ordered both of Appellant's trial defense counsel, Capt AM and Capt DS, to provide responsive declarations to address Appellant's ineffective assistance of counsel claim.[7] We have considered whether a post-trial evidentiary hearing is required to resolve any factual disputes between Appellant's assertions and his trial defense team's assertions. *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997); *United States v.*

---

[6] Appellant's younger brother was accidently shot and killed by Appellant's older brother in the family home.

[7] Because the issue was raised in the record but was not fully resolvable by those materials, we may consider the declarations submitted by trial defense counsel consistent with *United States v. Jessie*, 79 M.J. 437, 444 (C.A.A.F. 2020).

*DuBay*, 37 C.M.R. 411, 413 (C.M.A. 1967). We find a hearing unnecessary to resolve Appellant's claims.

In her declaration, Capt AM explained that after consulting with Appellant, she and Capt DS made the tactical decision not to present Appellant's diagnosis of PTSD to the military judge for sentencing because it would open the door to evidence that Appellant had possibly falsified the underlying events that led to that diagnosis. Specifically, Capt AM stated that she and Capt DS were aware investigators had uncovered some "discrepancies as to what [Appellant] told medical providers," and that prosecutors had witnesses prepared to "rebut [Appellant]'s PTSD diagnosis." Capt AM provided that prior to his court-martial she and Capt DS specifically discussed with Appellant not raising Appellant's PTSD diagnosis during sentencing and that Appellant agreed with their recommendation.

In his declaration, Capt DS confirmed that he was aware of information tending to indicate Appellant had misled his medical providers, that the diagnosis was based on some of this false information, and that the Government was ready to call witnesses to that effect should the Defense attempt to rely on the diagnosis. Capt DS stated that he and Capt AM interviewed multiple potential witnesses and reviewed public records regarding the claimed traumatic events supporting the diagnosis, and that they were "unable to identify any substantiation" for Appellant's claims. Capt DS explained that he expressed his concerns with Appellant regarding potentially opening the door to "damning rebuttal evidence" if they presented evidence during sentencing regarding his PTSD diagnosis. Furthermore, Capt DS provided that he explained to Appellant that they had "incontestable extenuation evidence" that would not create any risk that the military judge would receive evidence that Appellant falsified information to his mental health provider. Specifically, Capt DS advised Appellant that they could present testimony through Appellant's mother concerning his brother's death, which in Capt DS's opinion had a "clear and compelling" connection to Appellant's crimes without risking harmful rebuttal evidence. Capt DS stated that Appellant agreed with their advice and did not insist on including his PTSD diagnosis in either his written or verbal unsworn statement.

**B. Law**

The Sixth Amendment guarantees an accused the right to effective assistance of counsel. *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001). In assessing the effectiveness of counsel, we apply the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and begin with the presumption of competence announced in *United States v. Cronic*, 466 U.S. 648, 658 (1984). *See Gilley*, 56 M.J. at 124 (citing *United States v. Grigoruk*, 52 M.J. 312, 315

(C.A.A.F. 2000)). We review allegations of ineffective assistance de novo. *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (citation omitted).

We utilize the following three-part test to determine whether the presumption of competence has been overcome:

> 1. Are appellant's allegations true; if so, "is there a reasonable explanation for counsel's actions"?
>
> 2. If the allegations are true, did defense counsel's level of advocacy "fall measurably below the performance . . . [ordinarily expected] of fallible lawyers"?
>
> 3. If defense counsel was ineffective, is there "a reasonable probability that, absent the errors," there would have been a different result?

*Id.* (alterations in original) (quoting *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)). The burden is on the appellant to demonstrate both deficient performance and prejudice. *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012) (citation omitted).

The United States Supreme Court has defined the prejudice element of an ineffective assistance of counsel claim as:

> Focus[ing] on the question of whether counsel's performance renders the result of the trial unreliable or the proceedings fundamentally unfair. Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of a substantive or procedural right to which the law entitles him.

*Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985).

In assessing claims of ineffective assistance of counsel, we do not look at the success of the defense attorney's strategy "but rather whether counsel made an objectionably reasonable choice in strategy from the alternatives available at the time." *United States v. Dewrell*, 55 M.J. 131, 136 (C.A.A.F. 2001) (citation omitted).

"Defense counsel do not perform deficiently when they make a strategic decision to accept a risk or forego a potential benefit, where it is objectively reasonable to do so." *See Gooch*, 69 M.J. at 362–63 (citation omitted). In reviewing the decisions and actions of trial defense counsel, this court does not second-guess strategic or tactical decisions. *See United States v. Morgan*, 37 M.J. 407, 410 (C.M.A. 1993) (citations omitted). It is only in those limited circumstances where a purported "strategic" or "deliberate" decision is unreasonable or based on inadequate investigation that it can provide the foundation for a finding of ineffective assistance. *See United States v. Davis*, 60 M.J. 469, 474 (C.A.A.F. 2005).

## C. Analysis

Appellant has failed to meet his burden of demonstrating deficient performance. The declarations submitted by trial defense counsel show that their decision to not present evidence of Appellant's PTSD diagnosis was an objectively reasonable, strategic decision, as presenting such evidence would have enabled the Government to rebut the diagnosis with potentially damaging evidence that Appellant had fabricated the experiences he claimed caused his PTSD. The record demonstrates that these concerns were well-founded because Appellant's fabrications were noted in the report of investigation, and thus were known to Government counsel. Additionally, the Government's witness list alerted Appellant's counsel to the fact that the Government was prepared to rebut Appellant's PTSD diagnosis. We also note that Appellant's counsel still presented evidence during sentencing of both Appellant's combat service and the traumatic death of his younger brother. This approach leveraged the potential mitigation of Appellant's provable traumatic experiences and resulting mental health battles, while eliminating the potential for the Government to put on evidence that would have severely undermined Appellant's credibility, claims of PTSD, and remorse. Therefore, the record supports that Appellant's counsel made an informed, conscious, and reasonable decision to not present Appellant's PTSD diagnosis during sentencing and we will not second guess tactical decisions. *See Morgan*, 37 M.J. at 410.

We are also not persuaded that the individual or combined level of advocacy on Appellant's behalf was "measurably below the performance ordinarily expected of fallible lawyers." *See Polk*, 32 M.J. at 153. Here, the declarations submitted by Appellant's trial defense counsel detail that they made their own independent efforts to substantiate Appellant's claimed traumatic events, and conducted a thorough review of public records and Appellant's mental health records. The declarations also highlight that the concerns and sentencing strategy were discussed with Appellant before trial and that he agreed with the recommendations and advice from his counsel. We therefore conclude that there are reasonable explanations for defense counsel's actions and advice, and that the advice was the product of a thorough investigation by Appellant's counsel.

Even if we were to find deficient performance, Appellant has also not demonstrated prejudice. Here, Appellant received the lowest mandatory sentence possible under the PA with respect to both confinement and the characterization of his discharge. The PA called for a mandatory minimum of 60 days' confinement and a bad-conduct discharge. The adjudged sentence, in total, was reduction to the grade of E-1, 60 days of confinement, and a bad-conduct discharge. Thus, Appellant's reduction in rank was the only part of the adjudged sentence that was not otherwise mandatory, and Appellant has failed to demonstrate that his reduction in rank would have likely been less severe had

his counsel presented evidence of his PTSD diagnosis. We find that the evidence before the military judge regarding Appellant's multiple violent assaults and injury to his spouse amply supported his adjudged sentence in its entirety. We are similarly convinced the introduction of Appellant's diagnosis would not have resulted in a lower sentence. Portraying Appellant as having lied to his medical providers in order to obtain his diagnosis, on the other hand, almost assuredly would have yielded a more severe sentence.

In conclusion, after applying the framework employed by military courts to address claims of ineffective assistance of counsel, we conclude that Appellant has not overcome the presumption of competence, and has failed to demonstrate either deficient performance or prejudice. We find that no relief is warranted.

## III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court