# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 40297**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Everett W. EMERSON**
Major (O-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 3 January 2024

————————————

*Military Judge*: Charles E. Wiedie, Jr.

*Sentence*: Sentence adjudged on 6 April 2022 by GCM convened at Wright-Patterson Air Force Base, Ohio. Sentence entered by military judge on 19 May 2022: Dismissal and confinement for 30 months.

*For Appellant*: Major Heather M. Caine, USAF.

*For Appellee*: Lieutenant Colonel Thomas J. Alford, USAF; Major Joshua M. Austin, USAF; Captain Olivia B. Hoff, USAF; Captain Tyler L. Washburn, USAF; Mary Ellen Payne, Esquire.

Before RICHARDSON, BREEN, and DOUGLAS, *Appellate Military Judges*.

Judge BREEN delivered the opinion of the court, in which Senior Judge RICHARDSON and Judge DOUGLAS joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

BREEN, Judge:

A military judge sitting as a general court-martial found Appellant guilty, in accordance with his pleas and pursuant to a plea agreement, of two specifications of wrongful possession of child pornography (Charge I) and two specifications of

violating a lawful general order (Charge II) in violation of Articles 134 and 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 934, 892.[1] The military judge sentenced Appellant to a dismissal and confinement for 30 months.[2] The convening authority approved the sentence in its entirety and waived all of the automatic forfeitures for a period of six months for the benefit of Appellant's dependents, in accordance with the plea agreement.

Appellant raises four issues on appeal: (1) whether Specifications 1 and 2 of Charge II are an unreasonable multiplication of charges; (2) whether the segmented sentences for Specifications 1 and 2 of Charge II are inappropriately severe; (3) whether a provision in his plea agreement regarding prejudice attaching after appellate review is invalid; and (4) whether trial defense counsel were ineffective for failing to investigate and present evidence of Appellant's pornography addiction.[3]

We address issues (1) and (2) together as they concern issues related to Appellant's sentence for the same charge and specifications. We have also carefully considered issue (3) and find relief is not warranted. *See United States v. Guinn*, 81 M.J. 195, 204 (C.A.A.F. 2021) (citing *United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987)); *see also United States v. Goldsmith*, No. ACM 40148, 2023 CCA LEXIS 8, \*15 (A.F. Ct. Crim. App. 11 Jan. 2023) (unpub. op.) (declining to modify plea agreement or grant relief even if plea agreement provision unenforceable where appellant failed to demonstrate prejudice).

Finding no error that materially prejudiced Appellant's substantial rights, we affirm the findings and sentence.

## I. BACKGROUND

On 12 June 2008, Appellant commissioned in the United States Air Force as an officer, and at the time of trial, he was assigned to the Air Force Installation Contracting Center at Wright-Patterson Air Force Base, Ohio. On 1 March 2020, Appellant deployed to Kuwait. During his deployment, his stepdaughter discovered evidence that Appellant may have possessed child pornography and reported her discovery to the National Center for Missing and Exploited Children

---

[1] All references to the UCMJ, Rules for Courts-Martial, and Military Rules of Evidence are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] Specifically, the military judge sentenced Appellant to 12 months for each of the two specifications of possession of child pornography and 3 months for each of the two specifications of violation of a general order, and, in accordance with the plea agreement, the military judge directed all terms of confinement to run consecutively.

[3] Appellant personally raises this issue pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

(NCMEC). Thereafter, NCMEC referred the accusation to the Air Force Office of Special Investigations (AFOSI).

On 7 October 2020, Appellant returned from his deployment. After Appellant arrived at the Baltimore/Washington International Airport, Homeland Security agents, after coordination of AFOSI, stopped him. A subsequent search of Appellant's luggage resulted in the seizure of Appellant's cell phone and laptop. A further search of Appellant's cell phone revealed multiple images of suspected child pornography.

In addition to the seizure of evidence, AFOSI interviewed Appellant. After waiving his Article 31, UCMJ, 10 U.S.C. § 831, rights, Appellant admitted he viewed child pornography. Appellant explained that he began viewing child pornography in either 2017 or 2018 and continued to do so until a few months before his return from deployment. He further admitted to participating in child pornography exchanges with others on the dark web, and he gained sexual gratification from this participation. In addition to his possession of child pornography, Appellant admitted that he also possessed and transferred multiple images of adult pornography during his deployment.

## II. DISCUSSION

### A. Unreasonable Multiplication of Charges and Sentence Severity

#### 1. Additional Background

On 21 May 2013, the United States Central Command published General Order Number 1C (GO-1C), which prohibited certain activities and conduct within the United States Central Command Area of Responsibility (AOR). This order included a paragraph prohibiting possession or transfer of any pornographic or sexually explicit photographs. On 26 June 2020, United States Central Command published General Order Number 1D (GO-1D) prohibiting certain activities and conduct within the AOR. This new order included a similar paragraph prohibiting possession or transfer of any pornographic or sexually explicit photographs.

On 1 March 2020, Appellant left for his deployment to the AOR (Kuwait), and he returned on 7 October 2020. During his interview with AFOSI, Appellant admitted to possessing and transferring pornographic and sexually explicit photographs throughout his deployment. A subsequent analysis of Appellant's cellphone confirmed his access of multiple images of sexually explicit images.

As part of his guilty plea, Appellant admitted to possessing and transferring sexually specific photographs of adults to unknown users in online chat rooms. Appellant told the military judge that he "periodically" engaged in this conduct between approximately May 2020 and the end of September 2020. He further

admitted that he understood he had a duty to obey both GO-1C and GO-1D and that he knowingly and voluntarily failed to do so.

Prior to his guilty plea, Appellant initially filed a motion to dismiss Specification 2 of Charge II for unreasonable multiplication of charges. Appellant argued that his actions while deployed were one continuous action and he faced two specifications merely because of a change in the general orders. As part of the military judge's plea agreement inquiry with Appellant in accordance with Rule for Courts-Martial 910(f)(4), the military judge informed Appellant his previous motion for unreasonable multiplication of charges would be waived if his plea was accepted. Appellant acknowledged his understanding of the consequences of the waiver, and agreed the benefit he received included limitations on sentencing, specifically a maximum sentence of nine months instead of two years for each specification.

During his sentencing case, Appellant presented mitigating evidence, including character letters, family photographs, military accomplishments, performance reports and a personal video. In his unsworn statement, Appellant discussed his family life, family's military history, multiple deployments, and plans after the Air Force. Appellant expressed remorse for his misconduct but detailed mental health struggles and a pornography addiction that began in approximately 2016. He argued the military failed to help him with his issues, and he only recently received help through out-patient care.

**2. Law**

Rule for Courts-Martial 307(c)(4) dictates "[w]hat is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." This principle ensures the Government does not needlessly "pile on" charges against an accused. *United States v. Foster*, 40 M.J. 140, 144 n.4 (C.M.A. 1994), *overruled on other grounds by United States v. Miller*, 67 M.J. 385, 388–89 (C.A.A. 2009). The remedies for an unreasonable multiplication of charges include merger and dismissal. *United States v. Campbell*, 71 M.J. 19, 22 (C.A.A.F. 2008). When "an appellant intentionally waives a known right at trial, it is extinguished and may not be raised on appeal." *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009).

We review sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2016) (footnote omitted). We "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we] find correct in law and fact and determine[ ], on the basis of the entire record, should be approved." Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1).

### 3. Analysis

#### a. Unreasonable Multiplication of Charges

Appellant expressly waived all waivable motions in his plea agreement. Moreover, he specifically expressly acknowledged during his plea agreement inquiry that the motion for unreasonable multiplication of charges would foreclose review of this issue. Regardless, we still have the affirmative obligation under Article 66(d), UCMJ, 10 U.S.C. § 866(d), to examine the entire record to determine whether "to leave an [appellant]'s waiver intact or to correct the error." *United States v. Chin*, 75 M.J. 220, 223 (C.A.A.F. 2016) (citation omitted). That said, despite this authority "we will only ignore waiver in the most deserving cases." *United States v. Blanks*, No. ACM 38891, 2017 CCA LEXIS 186, at *22 n.11 (A.F. Ct. Crim. App. 16 Mar. 2017) (unpub. op.), *aff'd*, 77 M.J. 239 (C.A.A.F. 2018). Having reviewed the entire record, the plea agreement limitations of sentencing, and noting that Appellant's criminal misconduct involved multiple separate acts that occurred during both general order periods, we elect not to "pierce waiver," as relief based on the principle of unreasonable multiplication of charges is not warranted.

#### b. Sentence Severity

Despite our determination that this was not a case that merited overlooking Appellant's waiver, we are required to "assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (per curiam) (citations omitted). While we have discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010) (citation omitted).

For Specifications 1 and 2 of Charge II (general order violations), the maximum sentence available based upon Appellant's plea agreement included 18 months of confinement.[4] Appellant contends that his confinement sentence for these specifications is inappropriately severe because he was also sentenced for possession of child pornography while deployed (Specification 2 of Charge I) and both specifications of Charge II address a single continuing course of conduct. We are not persuaded the sentence for Charge II was inappropriately severe.

As detailed in his plea inquiry, Appellant "periodically" possessed and transferred sexually explicit photographs throughout his deployment and across two different general orders. After considering the evidence presented and the arguments of counsel, the military judge determined that three months' confinement was appropriate for each specification of Charge II. Having considered the nature

---

[4] The plea agreement provided a maximum confinement sentence of nine months for each specification but dictated that the sentences would be served consecutively.

and seriousness of Appellant's admitted misconduct, and matters contained in the entire court-martial record, including his record of service, all matters submitted in mitigation, and his written and verbal unsworn statements detailing his remorse and addiction to pornography, we conclude the adjudged confinement of three months for each specification of Charge II, as well as the other components of the sentence, fairly and accurately punishes Appellant for his misconduct. Therefore, the adjudged and entered sentence is not inappropriately severe.

## B. Ineffective Assistance of Counsel

On appeal, Appellant asserts the performance of both of his trial defense counsel was deficient because of their failure to adequately investigate evidence of Appellant's attempts to receive mental health treatment for an addiction to pornography before he engaged in the charged offenses, and how the military's failure to help him with his addiction led to his criminal conduct. Appellant argued the failure to obtain medical records showing his prior attempts to receive treatment and the failure to present testimony from mental health providers on this issue prejudiced him because (1) it may have been presented to the convening authority during plea negotiations and Appellant may have "avoided" pleading guilty to Specification 2 of Charge II, and (2) Appellant may have received a lower sentence.

Based on Appellant's allegations, our court ordered each trial defense counsel to submit a declaration regarding Appellant's claims. We considered Appellant's declaration and both declarations from his trial defense counsel in addressing Appellant's claims.[5] *See United States v. Jessie*, 79 M.J. 437, 442 (C.A.A.F. 2020). We find Appellant has not overcome the presumption of competent defense counsel.

### 1. Additional Background

In support of his claim that he did not receive effective assistance of counsel, Appellant provided a sworn declaration. He stated he sought treatment for mental health issues and a "porn addiction" at the Wright-Patterson Air Force Base, Ohio, Behavioral Health Clinic, in 2015. The clinic informed him that they could not provide him with treatment, and they "refused" to provide him with an off-base referral for private treatment. Appellant claimed he told his trial defense counsel about his attempts to receive treatment prior to the charged offenses, but they told him they would discuss it later. Finally, he let his trial defense counsel know about his current mental health provider who had been treating him since 2021. He was

---

[5] We also considered whether a post-trial evidentiary hearing is required to resolve any factual disputes between Appellant's assertions and those of his trial defense counsel and find a hearing is unnecessary. *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997); *United States v. DuBay*, 37 C.M.R. 411, 413 (C.M.A. 1967). There are no factual disputes contained in the affidavits that are "material" to the resolution of Appellant's post-trial claim of ineffective assistance of counsel and the record "conclusively shows" Appellant is entitled to no relief. *Ginn*, 47 M.J. at 244.

aware that trial defense counsel spoke to his provider but his defense team did not present testimony from his provider.

Upon order of the court, Appellant's trial defense counsel, Major MS and Major AP, provided sworn declarations. Their declarations were generally consistent with each other and discussed their strategic beliefs regarding the impact of Appellant's "porn addiction" evidence. As part of their trial preparations, trial defense counsel learned from Appellant that he sought treatment for a pornography addiction as early as 2016. On multiple occasions, they requested Appellant procure his medical records, but they were only able to procure records for the last year.

During routine pretrial interviews, the trial defense counsel interviewed Appellant's wife and learned from her that the mental health clinic purportedly told Appellant he could receive mental health treatment but was told he would have to pay "out-of-pocket." Trial defense counsel interviewed his mental health provider and discovered the existence of potential misconduct that predated the charged misconduct. Therefore, they concluded Appellant's unwillingness to personally try to solve what appeared to be a long-term problem and the danger of exposing uncharged misconduct outweighed any mitigation from the Government's failure to provide treatment.

The defense team, after consultation with their confidential expert, also believed the presentation of medical records or testimony presented a significant risk of permitting the Government to present their own rebuttal expert testimony. This testimony could criticize the treatment modality and Appellant's participation. Additionally, the government expert may have testified that the conditions affecting Appellant's criminal behavior still exist and increased the likelihood of Appellant reoffending or committing additional misconduct. In consideration of all these factors, they believed the best and safest strategic approach to achieve their goal of minimizing confinement and possibly avoid a dismissal was to present this issue through Appellant's unsworn statement.

In his written unsworn statement, Appellant informed the court-martial that he recognized he had a problem in 2016 and asked for help at the Wright-Patterson Air Force Base Behavioral Health Clinic. He initially worked with a mental health provider, but the clinic told him they could not help him and could not provide a referral to a provider. Later, in October 2020, he worked with a private mental health provider and received both individual and group therapy. Appellant also participated in a more intensive outpatient program for veterans. Finally, he expressed his commitment to continuing his treatment.

**2. Law**

The Sixth Amendment[6] guarantees an accused the right to effective assistance of counsel. *United States v. Gilley* 56 M.J. 113, 124 (C.A.A.F. 2001). We review allegations of ineffective assistance de novo. *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (citing *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009)). In assessing the effectiveness of counsel, we apply the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and begin with the presumption of competence announced in *United States v. Cronic*, 466 U.S. 638, 658 (1984). *See Gilley*, 56 M.J. at 124 (citing *United States v. Grigoruk*, 52 M.J. 312, 315 (C.A.A.F. 2000) (additional citation omitted).

The burden is on the appellant to demonstrate both deficient performance and prejudice. *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012) (citation omitted). "[C]ourts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id*. We utilize the following three-part test to determine whether the presumption of competence has been overcome:

> 1. Are appellant's allegations true; if so, "is there a reasonable explanation for counsel's actions"?
>
> 2. If the allegations are true, did defense counsel's level of advocacy "fall measurably below the performance . . . [ordinarily expected] of fallible lawyers"?
>
> 3. If defense counsel was ineffective, is there "a reasonable probability that, absent the errors," there would have been a different result?

*Gooch*, 69 M.J. 353 at 362 (alterations in original) (quoting *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)).

In assessing claims of ineffective assistance of counsel, we do not look at the success of the trial defense attorney's strategy in obtaining their goal, "but rather whether counsel made an objectively reasonable choice in strategy from the alternatives available at the time." *United States v. Dewrell*, 55 M.J. 131, 136 (C.A.A.F. 2001) (citations omitted). "[O]ur scrutiny of a trial defense counsel's performance is 'highly deferential,' and we make 'every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate conduct from counsel's perspective at the time.'" *United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F. 2015) (omission in original) (quoting *Strickland*, 466 U.S. at 689). We will not second-guess reasonable strategic or tactical decisions by trial defense counsel. *Mazza*, 67 M.J. at 475 (citations omitted).

---

[6] U.S. CONST. amend. VI.

"Defense counsel do not perform deficiently when they make a strategic decision to accept a risk or forego a potential benefit, where it is objectively reasonable to do so." *Datavs*, 71 M.J. at 424 (citation omitted). Trial defense counsel's advice to an accused, or counsel's strategic decision that is unreasonable or based on inadequate investigation, can provide the factual foundation for a finding of ineffective assistance. *See United States v. Davis*, 60 M.J. 469, 474–75 (C.A.A.F. 2005). It is only in those limited circumstances where a purported "strategic" or "deliberate" decision is unreasonable or based on inadequate investigation that it can provide the foundation for a finding of ineffective assistance. *See id.* at 474. "While an appellant may [ ] disagree with the decision in retrospect," such disagreement does not necessarily mean the decision fell "below *Strickland*'s objective standard of reasonableness." *United States v. McConnell*, 55 M.J. 479, 485 (C.A.A.F. 2001). Moreover, "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (citation omitted).

### 3. Analysis

We conclude Appellant's trial defense counsel's assistance was not ineffective. In our view, the presentation of live testimony or documentary evidence regarding Appellant's lengthy pornography addiction would not have offered a mitigation benefit over presenting the same information in his unsworn statement. While direct evidence ordinarily may have more credibility than unsworn statements, the defense team reasonably believed this additional evidence could have exposed uncharged misconduct or opened the door to government expert testimony about Appellant's treatment and potential to reoffend.[7] This approach was not based on a failure to investigate or an indifference to their client's decisions but rather a deliberate tactic intended to preserve the defense goal of minimizing confinement and potentially avoiding a dismissal. This strategic decision not to present the additional evidence was reasonable under the circumstances, and we will not second-guess reasonable strategic decisions. Therefore, based on the objective reasonableness of his defense team's actions, their tactical decisions did not fall "measurably below" the standards expected of fallible lawyers. *See Gooch*, 69 M.J. at 362; *Dewrell*, 55 M.J. at 133.

Even if we assume *arguendo* that Appellant's trial defense counsel were ineffective for not conducting additional investigation and presenting direct evidence regarding Appellant's mental health history, there is no "reasonable probability" of a different result. *Datavs*, 71 M.J. at 424. In his brief, Appellant speculates the additional evidence "may" have influenced plea negotiations and "may" have resulted in a lower sentence, but we are not convinced. Appellant pleaded guilty to

---

[7] *See* Military Rule of Evidence 513(d)(7) (an accused's communications with his mental health providers remains privileged unless he "offers statements or other evidence concerning his mental condition in defense, extenuation, or mitigation").

two specifications of wrongful possession of child pornography and two specifications of violating a lawful general order for possessing adult pornography. After reviewing the evidence supporting these specifications and considering Appellant's unsworn statement, the military judge sentenced Appellant to a dismissal and 30 months' confinement. We find the additional evidence related to Appellant's addiction to pornography and treatment history less than compelling, and there is no reasonable probability the convening authority would have dismissed any more specifications or that Appellant would have received a lower sentence.

### III. CONCLUSION

The findings and sentence as entered, are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.



FOR THE COURT

CAROL K. JOYCE
Clerk of the Court